UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| EnTech, LTD., | CASE NO. 5:16CV1541 |
| Plaintiff, | JUDGE JOHN R. ADAMS |
| v. | |
| Marcia Speece, | **MEMORANDUM OF OPINION** |
| Defendant. | (Resolves Docs. 50, 51, & 64) |

Pending before the Court is for summary judgment (Doc. 51) and two separate motions for sanctions filed by Defendant Marcia Speece. Plaintiff EnTech, Ltd. has opposed all three motions.[1] Upon review, Speece's motion for summary judgment is GRANTED. The motions for sanctions are GRANTED IN PART AND DENIED IN PART.

## I. Facts & Procedure

There is can be no dispute that this litigation is little more than an extension of the divorce proceedings of Marcia Speece and Bryan Speece. Bryan Speece was the founder and president of EnTech. For nearly seven years, Marcia Speece was the bookkeeper for the company. On May 29, 2015, Marcia Speece filed for divorce, and on the following day, she moved out of the home with the parties' children. It is the alleged activities of the following day, May 30, 2015, that give rise to this litigation.

---

[1] The parties disagree over whether EnTech's opposition to summary judgment is also a cross-motion for summary judgment. Regardless of how the pleading is characterized, the Court will resolve the arguments contained therein.

According to the EnTech's complaint, Marcia Speece removed a company computer from Bryan Speece's home office in the basement of the marital home. EnTech claims to have demanded the return of the computer on June 30, 2015. Upon that demand, EnTech was informed that the computer was in the possession of the Marcia Speece's divorce attorney. Arrangements were made to secure the computer, and Bryan Speece retrieved it on July 9, 2015. EnTech claims that Bryan Speece immediately recognized that the hard drive in the computer had been "wiped clean." EnTech alleged that Bryan Speece was forced to recreate the lost information. Conveniently for EnTech, Bryan Speece was able to hire his father to assist in recreating the data. EnTech alleged that the cost of hiring the father was $30,000 and that Bryan Speece had also agreed to pay his father an additional $15,000 for renting space in his home. EnTech also asserts that Marcia Speece and her counsel "made representations and filed motions that contain information that would not be known to Defendant Marcia Speece or her attorneys had the contents of the Computer not been accessed." Doc. 1 at 4.

Based upon the above, EnTech raised four claims against Marcia Speece. Specifically, EnTech asserted a claim under the Computer Fraud and Abuse Act and state law claims for replevin, conversion, and civil conspiracy. Marcia Speece has moved for summary judgment on all four claims. The Court first resolves the parties' arguments related to summary judgment.

## II. Legal Standard

Summary judgment is appropriate only when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986). The moving party must demonstrate to the court through reference to pleadings and discovery responses the absence of a genuine issue

of material fact. *Celotex Corp. v. Catrett,* 477 U.S. at 323. This is so that summary judgment can be used to dispose of claims and defenses which are factually unsupported. *Id.* at 324. The burden on the nonmoving party is to show, through the use of evidentiary materials, the existence of a material fact which must be tried. *Id.* The court's inquiry at the summary judgment stage is "the threshold inquiry of determining whether there is the need for a trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 250.

The court's treatment of facts and inferences in a light favorable to the nonmoving party does not relieve that party of its obligation "to go beyond the pleadings" to oppose an otherwise properly supported motion for summary judgment under Rule 56(e). *See Celotex Corp. v. Catrett,* 477 U.S. at 324. The nonmoving party must oppose a proper summary judgment motion "by any kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves ..." *Id.* Rule 56(c) states, "... [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." A scintilla of evidence in favor of the nonmoving party is not sufficient.

**III. Law and Analysis**

1. <u>Summary Judgment</u>

All four of EnTech's claims hinge on the same core allegation. Namely, that Marcia Speece or her agent unlawfully accessed the EnTech computer and obtained confidential

information from it.  However, despite exhaustive discovery and now extensive briefing, EnTech has not been able to put forth any admissible evidence to support its claims.

EnTech relies heavily on the affidavit of Bryan Speece's mother, Janet Speece.  Janet Speece asserted as follows about a conversation she had with her grandson, Iain:

> I followed Iain from the room and told him that his father was particularly concerned about the EL computer and monitor that had been taken from his office; I asked Iain if he had taken that equipment from his father's office; Iain said his mother wanted it and had told him to take it; he also said that they had loaded it into the car the day they left; I told Iain what they took was not just any computer system, it was very important equipment, and that his father needed it to complete work he had started for EL. I then made it very clear to Iain that his father wanted that equipment returned immediately; Iain said it wasn't up to him, that his mother was the one who had that equipment, and if his father wanted to try and get any of it back he'd have to talk to his mother about it[.]

Doc. 54-4 at 4.  EnTech, to date, has offered no argument that would suggest that the above hearsay would be admissible.  EnTech has also made no attempt to explain how it is that Iain Speece's alleged statements to his grandmother are in direct conflict with his own sworn testimony.  During his deposition, Iain Speece admitted to removing his own computer from a different portion of the family home's basement.  Iain was then asked:

> Q. Did any other computers leave with you and your mother that day … other than the one that you put in the car?
>
> A. No, not that I'm aware of.

Doc. 54-3 at 22.  Thus, EnTech has not produced any competent evidence with respect to how or by whom the EnTech computer was removed from the home.

There is no dispute that at some point in time the EnTech computer came into the possession of Marcia Speece and eventually her counsel.  Marcia Speece admitted to such possession when Bryan Speece demanded return of the equipment.  Moreover, Bryan Speece produced circumstantial evidence that suggested that Marcia Speece or her counsel was aware of

some of the information on the computer. Bryan Speece swore in his affidavit that Marcia Speece's counsel made reference to "'comprehensive spreadsheets tracking every pre-production and production level display by model #, SL and units shipped,' as being one of the tables that existed on the EnTech Computer that I referenced when testing. It contained confidential information of 3rd-parties and had been provided to EnTech under layers of NDAs." Doc. 54-1. Bryan Speece also suggested that Marcia Speece learned the named of certain Asian companies through the computer.[2] At its core, EnTech's argument suggests that Marcia Speece *could not* have learned any of the above information without committing the torts contained in the complaint.

EnTech, however, has not produced a scintilla of evidence in support of its conclusion. Even if the Court accepted Bryan Speece's assertions as true, EnTech has wholly failed to offer any evidence that Marcia Speece or her counsel actually accessed the computer at issue. On the record before this Court, it appears far more plausible the couple's son, Iain, accessed the computer. In fact, Iain admitted during his deposition to swapping out the graphic cards in the EnTech computer with his own, lesser-quality graphics card. In any event, no competent evidence has been produced that Marcia Speece accessed the computer or currently possesses information that was taken from the computer. The complete lack of evidentiary support for the claim that Marcia Speece accessed the computer is fatal to all of EnTech's claims.[3]

2. <u>Sanctions</u>

Marcia Speece has sought sanctions under Fed.R. Civ.P. 11. Fed. R. Civ. P. 11(b) states:

---

[2] Given Marcia Speece's role as the bookkeeper for EnTech, both of these items are less-than-compelling evidence. It is hardly surprising that Marcia Speece would know customer names and/or their correct spelling and have a general idea of how her husband tracked the work he was conducting.

[3] In her deposition, Marcia Speece unequivocally denied accessing any EnTech information on the computer, copying any information from the computer, or printing any information from the computer. Doc. 50-3 at 28.

> (b) Representations to Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Rule 11 permits sanctions under section (c) which holds:

> (c) Sanctions. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

In determining whether sanctions may be imposed under Rule 11, the Sixth Circuit has stated the appropriate test is "whether the individual's conduct was reasonable under the circumstances." *International Union, United Auto., Aerospace and Agr. Implement Workers of Am. v. Aguirre*, 410 F.3d 297, 304 (6th Cir. 2005). A good faith belief in the merits of a case is insufficient to avoid sanctions. Rather, counsel must "meet an objective standard of reasonableness." *Mann v. G & G Mfg., Inc.*, 900 F.2d 953, 958 (6th Cir. 1990).

As amply demonstrated by Marcia Speece's motion and reply briefs, EnTech's theory of the case has dramatically changed during the course of the litigation. However, even with this ever-changing theory of liability, EnTech has wholly failed to produce any *admissible* evidence

that would support its claims. It is undisputed that the EnTech computer was removed from the marital home. However, as detailed above, Bryan Speece was able to offer minimal, at best, circumstantial evidence that information on the computer had been accessed by someone. Bryan Speece effectively asserted some general knowledge of his business products and customers could only have been obtained by accessing the computer. As detailed above, the information alleged to have been learned could have easily been learned through Marcia Speece's role as a bookkeeper for EnTech or even through inadvertent observation of a computer screen.

More importantly, even if the Court were to assume that the alleged confidential information had been accessed improperly through use of the computer, it would not aid EnTech's position. The record contains no admissible evidence regarding *who* accessed the computer. EnTech seeks to have this Court infer that Marcia Speece accessed the computer because it was ultimately placed into the possession of her counsel. However, Marcia Speece's sworn testimony contradicts any such inference. Moreover, the circumstantial evidence detailed above strongly suggests that any access of the computer was performed by the parties' son, Iain. Bryan Speece presented specific evidence that the graphics card in the computer had been replaced with a graphics card that was formerly in Iain's computer. Iain, however, is not a party to this litigation. Accordingly, his possible actions with respect to the computer do not aid EnTech's causes of action.

It appears that the sole evidence EnTech could muster in support of its claims against Marcia Speece was inadmissible hearsay offered by Bryan Speece's mother, Janet Speece. Janet Speece asserted that Iain told her that the computer was removed at Marcia Speece's direct request. Iain never admitted to making such a comment during this litigation. Moreover, the Court takes judicial notice of the findings made by the domestic relations judge that had the opportunity to

observe all of the parties testify in person. The domestic relations judge reached the following conclusions in his decision granting the parties' divorce:

- "Defendant Bryan Speece's transfer of accounts with the assistance of his mother Defendant Janey Speece constituted financial misconduct." Doc. 64-9 at 5.
- "Plaintiff Marcia Speece is a credible witness." Doc. 64-9 at 5.
- "Defendant Bryan Speece has been evasive and contradictory in his testimony." Doc. 64-9 at 5.
- "Defendant Janet Speece has also been evasive and not credible." Doc. 64-9 at 5.
- "The attorney's fees statements submitted by Defendant Janet Speece for services purportedly rendered to EnTech, Ltd., are, at best, questionable." Doc. 64-9 at 6.

While this Court does not adopt those findings, it is exceedingly troubling that the pattern identified by the domestic relations court has continued in this litigation. In support of damages herein, Bryan Speece and EnTech asserted that the need to reconstruct the lost data from the computer required him to outsource the work. Conveniently for EnTech, the work was performed by Bryan Speece's father at considerable cost. Moreover, the "more secure" work environment that was obtained was space in Bryan Speece's parents' home, also at considerable cost. Much like Janet Speece's attorney fees, those costs are, at best, questionable.

Similarly. Bryan Speece has been contradictory in his statements and testimony to the Court. From the outset of this matter, the Court attempted to ascertain the specific factual basis that formed the basis for all of the pending claims. The essence of that claim was that the computer was removed from the home by Marcia Speece, accessed, and wiped clean. When this issue was discussed in the underlying domestic relations case, Bryan Speece testified as follows: "The physical condition was okay. It was a little bit dismantled but, I mean, all the parts that counted were there." Doc. 60-2 at 140. Bryan Speece seems to suggest that this was his commentary after

only a cursory review of the computer. However, Bryan Speece gave this testimony on August 8, 2018, more than two years after *this* litigation had been filed. It defies logic to now suggest that the returned computer was missing a vital component. If the computer and its contents were as important as purported, there is simply no reasonable explanation for the discussion of this missing hard drive to first arise *years* after the computer had been returned to Bryan Speece and EnTech. Instead, this ever-evolving theory of liability only serves to undercut Bryan Speece's credibility as a witness.

In the Court's view, it was not reasonable to continue this litigation following the completion of the depositions of Iain and Marcia Speece. Thereafter, it should have been clear to both the parties and counsel that EnTech could offer no admissible evidence that would prove all the essential elements of each of its claims. Accordingly, it was unreasonable to continue the litigation. By no later than December 13, 2019, counsel for Marcia Speece shall brief the issue of the proper amount of sanctions based upon this order of the Court. EnTech and its counsel shall have thirty days to respond in opposition to the brief filed by Marcia Speece.

**IV. Conclusion**

Defendant Marcia Speece's motion for summary judgment (Doc. 51) is GRANTED. Defendant Marcia Speece's substantive motions for sanction (Doc. 50) is GRANTED. Marcia Speece's second motion for sanctions (Doc. 64) is DENIED IN AS MOOT[4] as detailed herein.

IT IS SO ORDERED.

Date: November 15, 2019  /s/ John R Adams
JOHN R. ADAMS
U.S. DISTRICT JUDGE

---

[4] Marcia Speece's second motion for sanctions (Doc. 64) is subsumed by the Court's resolution of her first motion for sanctions. Accordingly, it is denied as moot.