IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON

| | | |
|---|---|---|
| ENTECH, LTD., | ) | CASE NO. 5:16-CV-01541-JRA |
| | ) | |
|     Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| MARCIA SPEECE, JOHN DOES, JANE DOES, | ) | CARMEN E. HENDERSON |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
|     Defendants, | ) | |

Pending before the Court is a motion for sanctions filed by Defendant Marcia Speece ("Speece"). (ECF No. 84). On May 10, 2021, the district court referred the motion to the undersigned Magistrate Judge to issue a report and recommendation following the parties' briefs. (ECF No. 87). The matter is fully briefed (ECF No. 84, 88, and 90) and ripe for review. Upon review of the parties' briefs and relevant legal authority, the Court recommends DENYING Defendant Speece's motion for sanctions.

    I.    Background

This matter originated in 2016 following initiation of divorce proceedings between Defendant Speece and her husband, Bryan Speece, CEO of Plaintiff EnTech. EnTech claims that when Defendant Speece left the marital property she took with her a computer belonging to EnTech and caused confidential data to be wiped from the computer's discs. In 2019, the district court ruled in favor of Defendant Speece on her motion for summary judgment as well as her motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. (ECF No. 67). EnTech appealed to the Sixth Circuit Court of Appeals. (ECF No. 69). On January 27, 2021, the

Sixth Circuit reversed the district court's grant of summary judgment in favor of Defendant Speece and the award of sanctions against EnTech. *EnTech, Ltd. v. Speece, 841 F. App'x* 944, 957 (6th Cir. 2021).

Much of the background of this matter was set forth by the Sixth Circuit:

> This case concerns an EnTech computer that Marcia Speece allegedly—either alone or in concert with her son Iain Speece—removed from the home she shared with her now-estranged husband, Bryan Speece (EnTech's owner). We will refer to the various Speeces by their first names in this opinion to avoid confusion.
>
> Bryan founded EnTech in 2004 to "promote highly specialized software to enhance the operation of intelligent displays," for example, computer monitors. R. 54-1 (B. Speece Aff. at ¶ 5) (Page ID #808). Among other things, Bryan's EnTech work involved testing prototype displays provided by third-parties. Id. at ¶ 11 (Page ID #809–10). EnTech was not just Bryan's domain—it was a family affair.
>
> Marcia served as EnTech's bookkeeper from its inception until the couple separated, id. at ¶ 23 (Page ID #814), and Janet Speece, Bryan's mother, has served as its in-house counsel, R. 54-4 (J. Speece Aff. at ¶ 2) (Page ID #955). Indeed, Bryan did much of his work for EnTech on a computer located in his basement office in the Speeces' Chagrin Falls home. R. 54-1 (B. Speece Aff. at ¶¶ 13–18) (Page ID #810–12).
>
> Bryan built his EnTech work computer himself and upgraded it in 2013 with parts that he mostly purchased from a retail computer store, Micro Center. Id. In particular, Bryan installed a "120 gigabyte solid state drive" and an additional "rotating hard drive," the latter of which held data copied over from the earlier iteration of Bryan's work computer. Id. at ¶¶ 15, 17–18 (Page ID #811–12). These and the other computing components were housed in a relatively generic "black tower enclosure[ ]," and, together with a prototype thirty-inch Dell monitor, constitute the computer system at issue, id. at ¶¶18, 20 (Page ID #812), which we will henceforth refer to as the "EnTech Computer."
>
> The EnTech Computer is not to be confused with a computer that Iain used for playing video games ("Iain's Computer"). Iain's computer was located around the corner from Bryan's office, in a

corner of the Speeces' basement that the Parties refer to as Iain's "Sanctum." Id. at ¶ 21 (Page ID #813). Iain and Bryan built Iain's Computer together around the same time that Bryan upgraded the EnTech Computer, but used components purchased online, not at Micro Center. Id. at ¶¶ 13–14 (Page ID #810); R. 50-2 (I. Speece Dep. at 37–39) (Page ID #614). Although similar in some respects, Iain's Computer was built from different components and was housed in a smaller black tower that had additional venting. R. 54-1 (B. Speece Aff. at ¶ 20) (Page ID #812–13).

On May 30, 2015, Marcia took the Speeces' two children and moved out, having filed for divorce the day before. Id. at ¶ 23–24 (Page ID #814); R. 50-1 (Divorce Dkt. at 1) (Page ID #574). Bryan claims that he was ill at the time, was unaware that his family was leaving, and did not see them packing. R. 54-1 (B. Speece Aff. at ¶ 24) (Page ID #814). He also claims that "soon after" Marcia and the children's departure, he noticed that both the EnTech Computer and Iain's Computer were missing from the basement. Id. at ¶ 25 (Page ID #814). On June 19, 2015, Bryan emailed Marcia and informed her that Iain "took a computer system and monitor that belong to my business" and that Iain needed to "contact [Bryan] immediately to return those items." Id., Ex. 10 (emails) (Page ID #861).

Earlier on June 19th, and unbeknownst to Bryan, Iain had returned to the Speeces' Chagrin Falls home to pick up some belongings. R. 54-4 (J. Speece Aff. at ¶¶ 17–21) (Page ID #958–59); see R. 54-1 (B. Speece Aff. at ¶¶ 28–29) (Page ID #815–16).

There, Iain encountered Janet and his grandfather (Bryan's father), Peter Speece. R. 54-4 (J. Speece Aff. at ¶¶ 19–20) (Page ID #958–59). According to Janet, whose affidavit EnTech filed in opposition to Marcia's motion for summary judgment, Janet informed Iain that Bryan was "particularly concerned about the [EnTech] computer and monitor that had been taken from [Bryan's] office." Id. at ¶ 22 (Page ID #959). Janet then asked Iain if he had taken that equipment, to which—according to Janet—Iain responded that "his mother wanted it and had told him to take it" and that "they had loaded it into the car the day they left." Id. When Janet told Iain that Bryan needed that equipment back immediately, "Iain said it wasn't up to him, that [Marcia] was the one who had that equipment, and if [Bryan] wanted to try and get any of it back he'd have to talk to [Marcia] about it." Id. Iain, for his part, testified at his deposition that he did not think that his grandmother mentioned his taking a business computer during the encounter and that he does not remember whether he had any conversation with his mother about

3

what computer equipment to take from the home when they moved out. See R. 50-2 (I. Speece Dep. at 73, 82–83) (Page ID #623, 625).

On June 30, 2015, Bryan followed up with another email, this time to Marcia and Iain. In it, Bryan demanded the "immediate return" of the "equipment belonging to my business," describing a "prototype" monitor and computer system that was "hand-built by me for analysis and testing purposes." R. 54-1 (B. Speece Aff., Ex. 11) (Page ID #863). Marcia responded on July 2, 2015, telling Bryan that "[t]he computer system that you have requested to be returned to you has been secured at my attorney's office" and that Bryan could contact her attorney to "facilitate the transfer" of the computer. Id., Ex. 12 (Page ID #865).

When Bryan went to collect the computer from Marcia's divorce counsel on July 9, 2015, he "was relieved to see that the EnTech Computer with its [ ] large monitor [was] present there." Id. at ¶33 (Page ID #817). Bryan recognized the EnTech Computer from the size of its tower enclosure and the thirty-inch prototype Dell monitor. Id. It was not until Bryan set up the computer at his parents' home that he noticed that

> a high-powered graphic card had been replaced with an entry level one, and that the rotating hard drive had been removed altogether. This was very disheartening as the key data had been present on that drive. The smaller solid state drive was still there and appeared to be physically intact, but the machine would not read from it.

Id. at ¶ 34 (Page ID #817–18). As a result, Bryan claims to have lost test data stored on the EnTech Computer and "confidential information and documents of third-party entities protected under NDA including charts and tables." Id. at ¶¶ 27, 34–35 (Page ID #815, 817–18). To reproduce the lost test data, Bryan—who was "unable to keep [his] mind focused at that time"—hired his father, Peter, paying him $30,000 for the work, which took 3 months, and $15,000 for rent because the work took place at Peter's home. Id. at ¶¶ 35–36 (Page ID #818–19). Bryan claims that during the couple's divorce proceedings, Marcia's divorce counsel referenced materials and confidential information that Bryan claims would have been from the EnTech Computer. Id. at ¶¶ 43, 45–46 (Page ID #821–22); see also R. 54-6 (J. Heutsche Aff.) (Page ID #997–1000).

Marcia and Iain, for their part, maintain that Iain removed Iain's Computer from Iain's Sanctum—but not the EnTech Computer

from Bryan's office—when they moved out on May 30, 2015. R. 50-3 (M. Speece Dep. at 77–79) (Page ID #666–67); R. 50-2 (I. Speece Dep. at 73–74) (Page ID #623). Both were deposed for this case and testified that this computer—Iain's Computer—was the one delivered to Marcia's divorce counsel for Bryan to pick up. R. 50-3 (M. Speece Dep. at 94–95) (Page ID #671); R. 50-2 (I. Speece Dep. at 117–18) (Page ID #634). Iain explained that prior to returning the computer, he purchased parts for and built a new computer for himself and transferred personal data from his computer onto a new hard drive. R. 50-2 (I. Speece Dep. 89–97) (Page ID #627–29). Iain also explained that he switched out the graphics card that was installed in the computer before it was delivered to Marcia's divorce counsel. Id. at 65, 105–107 (Page ID #621, 631).

EnTech filed suit on June 20, 2016, alleging one claim each for a violation of the CFAA, replevin, conversion, and civil conspiracy based on the allegation that Marcia—alone or with unnamed coconspirators—removed the EnTech Computer from the Speeces' home, accessed it, and "obtained information and/or caused damage and loss" to it. R. 1 (Complaint at ¶ 37) (Page ID #5). On November 2, 2018, Marcia moved for summary judgment on the ground that EnTech's claims lacked evidentiary support and for sanctions under Rule 11.[] Her motions argued that Iain's Computer was the only computer removed from the Speeces' home, that Iain, not Marcia, accessed that computer, which did not contain EnTech business information, and that neither she nor her divorce counsel possessed EnTech's confidential information. EnTech opposed both motions, arguing—based primarily on Bryan's and Janet's affidavits—that it was the EnTech Computer, not Iain's Computer, that Bryan recovered from Marcia's divorce counsel, that the EnTech Computer was returned with one hard drive wiped of data and another missing, and that this was attributable to Marcia directly or by way of Iain or Marcia's divorce counsel as unnamed co-conspirators. In support, EnTech also filed an expert report by a computer forensics firm, which matched components in the computer that EnTech purported to be the one that Bryan recovered from Marcia's divorce counsel to an April 2013 Micro Center receipt that Bryan provided. R. 54-7 (Vestige Report at 5) (Page ID #1010). The report also concluded that the computer's solid state drive had been "completely wiped." Id. Marcia moved to strike Bryan's and Janet's affidavits as attempts to create a "sham" issue of fact. R. 64 (Mot. Strike at 1–2) (Page ID #1431–32).

The district court granted Marcia's summary judgment motion on the papers, concluding that "[t]he complete lack of evidentiary

5

> support for the claim that Marcia Speece accessed the computer is fatal to all of EnTech's claims." EnTech, LTD. v. Speece, 5:16-CV-1541, 2019 WL 6051531, at *3 (N.D. Ohio Nov. 15, 2019). The district court did not rule on Marcia's motion to strike, but ruled sua sponte that Janet's affidavit contained hearsay that would be inadmissible at trial and thus disregarded it. See id. at *2. Concluding that it was unreasonable for EnTech to continue to pursue litigation after the depositions of Marcia and Iain—the point at which EnTech, according to the district court, should have realized it could not support its claims with evidence—the district court sanctioned EnTech pursuant to Federal Rule of Civil Procedure 11. Id. at *5.

*EnTech, Ltd.,* 841 F. App'x at 947–50.

The Sixth Circuit found that EnTech's "largely circumstantial" evidence was sufficient to survive summary judgment on all claims. *Id*. at 955-57. Having determined that the district court erred in granting summary judgment, the Circuit then reversed the district court's imposition of Rule 11 sanctions upon EnTech. *Id*. at 957. The case was remanded to the district court for further proceedings. (ECF No. 73). Mandate issued on February 24, 2021. (ECF No. 74).

On March 25, 2021, EnTech – who had just prevailed on appeal – moved to voluntarily dismiss its complaint without prejudice stating that its primary witness, CEO Bryan Speece, was unreachable. (ECF No. 77). The district court held a teleconference on March 30, 2021 to discuss, *inter alia*, EnTech's motion to dismiss. (ECF No. 81). On April 12, 2021, EnTech moved to dismiss its case with prejudice. (ECF No. 82). The district court granted the motion and dismissed the matter on April 18, 2021. (ECF No. 83).

On April 30, 2021, Defendant Speece filed the pending motion for sanctions pursuant to the Court's inherent authority, Rule 11(b), and 28 U.S.C. § 1927. (ECF No. 84). EnTech opposed the motion on May 28, 2021. (ECF No. 88). After obtaining an extension from the Court, Defendant Speece replied in support on June 28, 2021. (ECF No. 90).

II.  Law & Analysis

A. Law of the Case

Under the "law of the case" doctrine, district courts on remand are bound to follow the appellate court's decisions throughout the remainder of the case, with very limited exceptions. *Huffy Corp. v. Arai Indus. Co.*, 3 F. App'x 413, 415 (6th Cir. 2001) (citations omitted) ("The 'law of the case' doctrine holds that once an appellate court has ruled on a particular issue, absent exceptional circumstances, the ruling is final and must be followed by the district court on remand."). "An earlier appellate court's decision as to a particular issue may not be revisited unless 'substantially new evidence has been introduced, ... there has been an intervening change of law, or ... the first decision was clearly erroneous and enforcement of its command would work substantial injustice.'" *United States v. Corrado*, 227 F.3d 528, 533 (6th Cir. 2000) (quoting *Miles v. Kohli & Kaliher Assocs., Ltd.*, 917 F.2d 235, 241 n. 7 (6th Cir. 1990)).

EnTech argues that the Sixth Circuit's decision that EnTech reasonably pursued its claims is binding authority that precludes sanctions. (ECF No. 88 at 7). Speece argues that there is new evidence that was not previously provided to the appellate court (or district court) for consideration. Additionally, Speece argues that the requests for sanctions pursuant to § 1927 and the court's inherent authority were not previously determined by the district court – or the appellate court and, thus, not precluded by the Circuit's decision.

Here, Speece requests sanctions under authority not previously analyzed: Rule 11(b)(1), 28 U.S.C. § 1927, and the court's inherent authority. Accordingly, the law of the case does not preclude review under those theories. *See Moore v. Wesbanco Bank, Inc.*, 612 Fed. App'x 816, 820 (6th Cir. 2015). Additionally, the district court's award of sanctions pursuant to Rule 11(b) was limited in its scope. The record is clear that the district court awarded – and the court of appeals reversed – sanctions pursuant to Rule 11(b)(3). The district court analyzed the evidence that

7

supported EnTech's claims and stated: "it was not reasonable to continue this litigation following the completion of the depositions of Iain and Marcia Speece. Thereafter, it should have been clear to both the parties and counsel that EnTech could offer no admissible evidence that would prove all the essential elements of each of its claims. Accordingly, it was unreasonable to continue the litigation." (ECF No. 67 at 9). Because the district court's award of sanctions was premised on its finding that no admissible evidence supported EnTech's claims, a finding with which the Sixth Circuit disagreed, the Circuit reversed. The Sixth Circuit based its reversal on the theory that sanctions were improper given its finding that EnTech had provided evidence from which a reasonable juror could conclude that Speece accessed the EnTech Computer and obtained information from it, thus creating a genuine issue of material fact. *EnTech*, Ltd., 841 Fed. App'x at 954-955. The Circuit's decision only applies for sanctions sought under the same theory – that EnTech's factual contentions that Speece accessed the EnTech Computer and the confidential information contained therein lacked evidentiary support. *See In re Ruben*, 825 F.2d 977, 988 (6th Cir. 1987). Accordingly, the Court will also address Speece's request for sanctions under Rule 11(b)(3) to the extent not precluded by the Sixth Circuit's decision.

      B. Speece's Arguments

Speece makes no effort to differentiate her theories that justify sanctions. That is, she does not inform the Court which arguments or which factual recitations support a particular theory. The Court here summarizes Speece's arguments and will analyze them were they best fit.

Speece argues that sanctions are warranted due to EnTech filing and maintaining its lawsuit for an improper purpose. Specifically, that EnTech "improperly misused the federal court system to cover up [Bryan Speece's] own financial misconduct in addition to inflicting emotional and economic trauma" on Speece. (ECF No. 84 at 1-2). Additionally, Speece argues that EnTech's

8

counsel "failed to take the most basic steps required of competent counsel to corroborate their client's assertions; aided and abetted their client's dramatic changes in the theory of the case, and eventually pursued litigation without either confirmed authority or possibly even an actual client or officer of the company." (ECF No. 84 at 2). Finally, Speece argues that the lawsuit "was intended to harass and vexatiously multiply expensive proceedings against Marcia Speece at the insistence of Plaintiff EnTech, Ltd., its president and sole shareholder Bryan Speece, its purported authorized representative and General Counsel Janet L. Speece, and, sadly, at times by the law firm of Taft Stettinius & Hollister LLP even in the admitted absence of a client." (ECF No. 90 at 15).

In support of Speece's motion for sanctions Speece includes "new" evidence of an email communication between Speece and her divorce attorney in which Speece asks her counsel how to best respond to an email from Bryan Speece regarding a computer that was allegedly removed from the home. Speece posed two alternative responses: 1) "Bryan, The computer system that you have requested to be returned to you has been secured at my attorney's office. Please contact Cynthia McGrae at 440.376.9465 during business hours and she will be happy to facilitate the transfer."; and 2) "Bryan, I am in receipt of your request for the return of Iain's computer system. I recognize your need for the return of the Wistron display. The system has been dedicated to Iain's use for the last couple of years—not for testing. Nevertheless, this is being returned as well. The equipment has been secured at my attorney's office. Please contact Cynthia McGrae at 440.376.9465 during business hours and she will be happy to facilitate the transfer." (ECF No. 84-4). According to Speece, this email is evidence "reveals the purpose of this lawsuit, the blatant lies of Plaintiff and that counsel for Plaintiff knew or should have known that this case

9

was meritless. … This new evidence must also be considered by the Court to avoid the substantial injustice that Defendant has been incurring for years now." (ECF No. 90 at 9).

Additionally, Speece argues that EnTech's attorneys should be sanctioned for continuing the litigation after the unavailability of their client – EnTech's CEO, Bryan Speece – from November 2018 through 2021. During that time, despite having no contact with Bryan Speece as he had "disappeared," EnTech's attorneys pursued an appeal of the district court's summary judgment determination and award of sanctions.

### C. Rule 11

Rule 11 prohibits attorneys from filing any "pleading, written motion, or other paper," unless "to the best of the [attorney]'s knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed R. Civ. P. 11(b).

"In this circuit, the test for the imposition of Rule 11 sanctions is whether the individual attorney's conduct was reasonable under the circumstances." *Michigan Division-Monument Builders of N. Am. v. Michigan Cemetery Ass'n*, 524 F.3d 726, 738-39 (6th Cir. 2008) (quoting

*Mann*, 900 F.2d at 958). The test of reasonableness under the circumstances is an objective standard. *Century Prods., Inc. v. Sutter*, 837 F.2d 247, 253 (6th Cir. 1988). This objective standard is intended to eliminate any "empty-head pure-heart" justification for patently frivolous arguments. *Nieves v. City of Cleveland*, 153 F. App'x 349, 353 (6th Cir. 2005). Rule 11 "stresses the need for some prefiling inquiry into both the facts and the law to satisfy the affirmative duty imposed by the rule." *Albright v. Upjohn*, 788 F.2d 1217, 1221 (6th Cir. 1986).

Rule 11(c)(1) grants the Court discretion to "impose an appropriate sanction" on an attorney or party "[i]f, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated." Rule 11(c)(2) provides a "safe harbor" which requires a party seeking sanctions for violations of Rule 11 to make a separate motion and "describe the specific conduct alleged to violate subdivision (b)." The Sixth Circuit "has expressly ruled that Rule 11 is unavailable where the moving party fails to serve a timely 'safe harbor' letter." *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 511 (6th Cir. 2002)). Importantly, the safe harbor requires the moving party to serve its motion for sanctions on the opposing party twenty-one (21) days before actually filing or presenting the motion to the court. The Sixth Circuit requires "strict adherence to the rule's outlined procedure." *Penn, LLC v. Prosper Bus. Dev. Corp.*, 773 F.3d 764, 768 (6th Cir. 2014). Moreover, a "party seeking sanctions must effectuate service at least twenty-one days 'prior to the entry of final judgment or judicial rejection of the offending contention.' " *Id.* at 767 (quoting *Ridder v. City of Springfield*, 109 F.3d 288, 297 (6th Cir. 1997)). "Failure to comply with the safe-harbor provision precludes imposing sanctions on the party's motion." *Id*. The court must address the procedural requirements of the rule before addressing the merits of Speece's motion. *Id*. at 766 (citing *Ridder*, 109 F.3d at 296 (6th Cir.1997) ("[T]he rule is unquestionably explicit ... that unless a movant has complied with the twenty-one day 'safe harbor'

11

service, the motion for sanctions 'shall not be filed with or presented to the court.' " (quoting former Fed. R. Civ. Pro. 11(c)(1)(A)))).

Speece served her motion for sanctions upon EnTech via CM/ECF upon its filing on April 30, 2021, twelve days *after* the district court dismissed the matter in its entirety pursuant to EnTech's voluntary motion to dismiss with prejudice. (*See* ECF Nos. 83 and 84). In its opposition brief, EnTech highlighted Speece's failure to comply with Rule 11's safe harbor requirements. (ECF No. 88 at 10). Speece fails to address her compliance with Rule 11's requirements in either her motion or her reply. (*See* ECF Nos. 84 and 90). There is no indication that Speece complied with Rule 11(c)'s safe harbor requirements.

Accordingly, the court recommends denying Speece's motion for sanctions under Rule 11 due to her "failure to observe the mandatory procedures of Rule 11." *Penn*, 773 F.3d at 7689.

D.  Section 1927

"The unavailability of Rule 11 sanctions in the present case does not rule out the possibility" of assessing attorney fees "against [EnTech's] counsel pursuant to 28 U.S.C. § 1927." *Ridder*, 109 F.3d at 297. "Unlike Rule 11 sanctions, a motion for excess costs and attorney fees under § 1927 is not predicated upon a 'safe harbor' period, nor is the motion untimely if made after the final judgment in a case. *Id*.

Section 1927 "declares that '[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.'" *Williams v. Shelby Cty. Sch. Sys.*, 815 F. App'x 842, 845 (6th Cir. 2020) (quoting 28 U.S.C. § 1927); *Salkil*, 458 F.3d at 532. "Section 1927 imposes an objective standard of conduct on attorneys, and courts need not make a finding of subjective bad faith before assessing monetary sanctions under § 1927."

12

*Salkil*, 458 F.3d at 532. (citations omitted). "Instead, a district court may impose sanctions under § 1927 when it determines that an attorney reasonably should know that a claim pursued is frivolous." *Id*. (citations and internal quotation marks omitted); *In re Royal Manor Mgmt., Inc.*, 525 B.R. 338, 366 (B.A.P. 6th Cir. 2015), *aff'd*, 652 F. App'x 330 (6th Cir. 2016)("[An] award of sanctions under § 1927 is appropriate 'when an attorney has engaged in some sort of conduct that, from an objective standpoint, 'falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party.' ... [or] when an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims....'")(quoting *Wilson–Simmons v. Lake County Sheriff's Dep't,* 207 F.3d 818, 824 (6th Cir. 2000) (citations and internal quotation marks omitted)). "Section 1927 sanctions may be imposed without a finding that the lawyer subjectively knew that his conduct was inappropriate." *Scherer*, 508 F. App'x at 439 (citing *Ridder*, 109 F.3d at 298; *see also Gibson v. Solideal USA, Inc.*, 2012 WL 2818944, at *6 (6th Cir.2012) ("A court may sanction an attorney under § 1927, even in the absence of bad faith")). "Simple inadvertence or negligence, however, will not support sanctions under § 1927." *Salkil*, 458 F.3d at 532 (citation omitted); *Scherer*, 508 F. App'x at 439 (the conduct must exceed "simple inadvertence or negligence that frustrates the trial judge.") (citing *Ridder*, 109 F.3d at 298). "There must be some conduct on the part of the subject attorney that trial judges, applying collective wisdom of their experience on the bench could agree falls short of the obligations owed by a member of the bar to the court." *Id*. (citations and internal quotation marks omitted).

First, when there is neither factual nor legal support for a claim, it may be construed as frivolous. Given the Sixth Circuit's finding that evidence exists, circumstantial or otherwise, which precluded summary judgment on EnTech's claims, the Court cannot now find that pursuing those

13

claims was frivolous. Speece's "new" evidence of the email she sent to her divorce counsel does not alter this outcome. Even if the Court considers this "new" evidence, it does nothing more than further support Speece's defense that neither she nor Iain took a computer other than Iain's Computer from the marital home. The Sixth Circuit's finding that EnTech provided evidence that precludes summary judgment is not changed with the introduction of this "new" evidence as it is directly related to the same issue of fact previously analyzed by the Sixth Circuit. Accordingly, based on the Sixth Circuit's finding, the Court does not find that EnTech's claims were frivolous.

Second, Speece argues that EnTech's counsel "failed to take the most basic steps required of competent counsel to corroborate their client's assertions[.]" (ECF No. 82 at 2). Speece's specific argument is that counsel failed to do a thorough Google search relating to their client and that counsel failed to review Bryan Speece's depositions in the domestic relations proceeding. Speece essentially argues that had counsel performed these steps, they would have known that the alleged confidential information known by Speece was (allegedly) publicly available – thus, evidence that she had not accessed the confidential information on the computer – and would have discovered that their client had made statements in his divorce proceedings regarding the state of the computer returned to him that conflicted with the evidence submitted in this case. (*See* ECF No. 84 at 4-5). Speece's argument again debates the factual contentions found by the Sixth Circuit to survive summary judgment. Because the Sixth Circuit's denial of summary judgment was predicated on these factual contentions, this Court cannot now say that EnTech's attorneys failed to perform their due diligence in researching their client's assertions.

Third, Speece argues that EnTech's counsel "aided and abetted their client's dramatic changes in the theory of the case[.]" Each of EnTech's four claims against Speece hinge on the same core allegation: that Marcia Speece or her agent unlawfully accessed the EnTech computer

and obtained confidential information from it. Although the district court previously noted EnTech's "ever-changing theory of liability," (*EnTech, LTD. v. Speece*, No. 5:16CV1541, 2019 WL 6051531, at *3 (N.D. Ohio Nov. 15, 2019), *rev'd and remanded*, 841 F. App'x 944 (6th Cir. 2021)), nothing prevented EnTech from changing its theory based on the evolving evidence. Speece provides no evidence that EnTech's counsel was doing anything other than following the evidence as it became known.[1]

Finally, Speece argues that EnTech's counsel "eventually pursued litigation without either confirmed authority or possibly even an actual client or officer of the company." (ECF No. 84 at 2). Speece's motion highlights each of the filings following the district court's dismissal of EnTech's claims beginning with EnTech's notice of appeal of that decision. Speece points out that EnTech's counsel continued to pursue the appeal despite no longer having access to Bryan Speece

---

[1] In fact, Speece even suggests that Bryan Speece was withholding information from EnTech's attorneys, thus leaving them in the dark as to the real purpose behind filing the lawsuit. (*See* ECF No. 84 at 5 ("Mr. Speece's apparent reluctance to proactively communicate to his outside counsel the details of the divorce case demonstrating that he and his parents, Peter and Janet Speece were engaged in financial misconduct is shameful, albeit now somewhat understandable. Details of the improper transfer of tens of thousands of dollars to Peter Speece and hundreds of thousands of dollars to Janet Speece in 2015 alone had likely not been shared.")).

– the only person authorized to make decisions on behalf of EnTech.² Although there may be ethical issues surrounding counsel's decision to continue litigation in the absence of a client, Speece fails to specify any action that demonstrates EnTech's attorneys intentionally abused the judicial process or knowingly needlessly multiplied proceedings. In fact, one of the final substantive actions taken prior to counsel seeking to dismiss this matter was the successful prosecution of the appeal described throughout this opinion.

The Sixth Circuit found that evidence supported EnTech's claims such that those claims must be presented to a jury for deliberation; thus, this Court cannot find that those claims were frivolous even with the additional of Speece's proposed "new" evidence. Further, the Court does not find that EnTech's counsel's behavior "[fell] short of the obligations owed by a member of the bar to the court[.]" *Wilson–Simmons*, 207 F.3d at 824. For these reasons, the Court does not recommend awarding sanctions under § 1927.

E.  Inherent Authority

"The district court has the 'inherent authority to award fees when a party litigates 'in bad faith, vexatiously, wantonly, or for oppressive reasons.''" *First Bank of Marietta v. Hartford*

---

² Counsel for EnTech represented that their authority to act in this case was given to it by Janet Speece pursuant to a power of attorney (ECF No. 81, Transcript of Telephone Conference held on 3/30/2021 before Judge John R. Adams, Page ID#1792-1810; ECF No. 84-1). No power of attorney has been docketed in the record. Additionally, on other occasions, Bryan Speece was described as being "out of town" (ECF No. 84-2, PageID#1848), "missing" (ECF No. 84-1, Page ID#1794), "disappeared" (ECF No. 84-1, PageID#1797), "not available to me" (ECF No. 84-1, PageID #1798), and "somewhere" on a 60-acre property because "[Speece] killed him" (see video of February 6, 2020 encounter with Geauga County Sheriff Deputy demonstrating knowledge of the Capias issued for Bryan Speece's arrest attached to Speece's Motion for Sanctions as Exhibit C). The idea that Bryan Speece executed a power of attorney prior to going missing, disappearing, or being killed is difficult to comprehend, and perhaps raises more questions. Primarily, what would have prompted him to do so at the time he allegedly did? Those questions, however, need not be addressed herein.

*Underwriters Ins. Co.*, 307 F.3d 501, 517 (6th Cir. 2002) (quoting *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir. 1997) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975))). "'In order to award attorney fees under this bad faith exception, a district court must find that 'the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment.'" *Id*. (quoting *Big Yank Corp.*, 125 F.3d at 313 (quoting *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1375 (6th Cir. 1987))).

Speece acknowledges that the Court must find that EnTech's claims were meritless in order to award fees under the court's inherent authority. (ECF No. 84 at 12 (citing *Big Yank Corp.*, 125 F.3d at 313)). Given the Sixth Circuit's finding that substantial evidence supports EnTech's claims, this Court cannot now find those claims lack merit. Speece argues that "new" evidence that was unavailable to the appellate court exists and sheds light on the merits of EnTech's claims in such a matter that it deems the Circuit's ruling essentially irrelevant to the instant matter. The Court disagrees that the evidence of Speece's email to her divorce attorney flips the appellate decision on its head. At trial, a jury would have weighed this evidence along with the evidence of EnTech and determined which story was more believable. Did Iain remove the EnTech Computer from his parents' house, remove a drive, and cause a drive to be wiped clean before giving it back to his father? Or did Iain remove *his* computer, change out some parts, and return *his* computer to Bryan Speece who then took those parts from Iain's Computer, replaced them in the EnTech computer (still in his possession), clear the drive in the EnTech computer himself, and then bring the EnTech Computer that *he* altered to the computer forensics company passing it off as the computer that he retrieved from Speece's divorce attorney in order to fabricate reasons to fraudulently transfer money out of marital assets? It appears that both Iain and Bryan Speece (or even Peter Speece)

17

had the ability to play "hide the computer" in the proposed manners. As the Sixth Circuit found, it was a jury's decision to determine which factual theory was most credible.

Finally, the Court notes that Marcia Speece's theory that this litigation was conducted essentially as a manner to dissipate her assets or punish her in some manner for divorcing Bryan Speece is a conceivable theory. It could certainly explain the manner and timing in which this litigation was brought. However, it remains only a theory unsupported by any evidence. Instead, the record before this Court stands with an appellate decision that the evidence supports going forward to a jury trial. As such, the Court cannot recommend a finding that the case was litigated in bad faith or in an oppressive manner.

Accordingly, this Court does not recommend awarding sanctions under the Court's inherent authority.

III.   Recommendation

Throughout this report and recommendation, the undersigned has noted the impact of the Sixth Circuit's decision on the resolution of this request for sanctions. The Court notes that at no time has it determined that such an opinion outright precludes an award of sanctions. However, the decision has indisputably, and by legal necessity, provided guidance for the review of the request for sanctions.

For the reasons set forth above, the undersigned recommends that the Court DENY Defendant Speece's motion for sanctions.

DATED: 8/10/2021

                                              *Carmen E. Henderson*
                                              Carmen E. Henderson
                                              United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).